Noel Knight, Esq.
SBN #223821
The Knight Law Group
800 J Street, #441,
Sacramento, CA 95814
Tel: 510-435-9210 – cell/text
Fax: 510-281-6889

Attorneys for Debtor…

P & M Samra Land Investments, LLC

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO DIVISION

| | |
|---|---|
| IN RE:<br><br>P&M SAMRA LAND INVESTMENTS, LLC<br><br>    Debtor and Debtor-in-Possession. | Case No: 2015 – 29136-A-12<br><br>Chapter 12;   DCN: NCK-012<br><br>**DEBTOR'S MOTION FOR…**<br><br>**INJUNCTION OF ADVERSE CREDITOR ACTIVITY**<br><br>**REQUEST TO HOLD CREDITOR SOCOTRA CAPITAL IN CONTEMPT OF CONFIRMED PLAN**<br><br>**REQUEST FOR SANCTIONS AS AGAINST SOCOTRA CAPITAL AND ITS AFFILIATED ENTITIES**<br><br>Date: February 5, 2018<br>Time: 10:00 a.m.<br>Place: 501 I St., Courtroom 28,<br>Dept. A<br>Judge: Hon. Michael S. McManus |

    Debtor P & M SAMRA LAND INVESTMENTS, LLC ("Debtor") by and through it's undersigned attorney, hereby moves the Court, pursuant to 11 U.S.C §1142, F.R.B.P. §105, for an Order from this Court which accomplishes the following…

DEBTOR'S MOTION FOR ORDER ON ADVERSE CREDITOR ACTIVITY

1

1. Prohibits creditors The Socotra Fund, LLC, Gary E. Roller Profit Sharing, and Petit Revocable Trust (collectively "Socotra" or "Socotra Capital")…from engaging in activity which either hinders or hurts the Confirmed Plan or harms the best interests of the creditors.

2. Holds creditor Socotra Capital…in contempt of the Confirmed Plan.

3. Provides sanctions as against creditor Socotra Capital…to ensure that they will be held at bay while Debtor continues to honor its Confirmed Plan to completion.

### **PREFACE**

From previous in-court commentary from the Bench, Debtor is aware that this Court doesn't look favorably on **adversary proceedings** vis-à-vis this case and to wit, Debtor is attempting to achieve its objective within the framework of 11 U.S.C §1227, et al.

Creditor Socotra is once again attempting to sell the farm out from under the Debtor as result of unpaid property taxes, having not given the Debtor a chance to establish a payment plan with the Sutter County Tax Collector, nor having either commented upon nor objected to the property tax arrears at the time of Plan Confirmation.

It should be noted that the Plan itself did not address the issue of property tax arrears either during creation process or at the time of Confirmation and thus, the Debtor is now requesting modification related thereto.

## STATUS OF THE DEBTOR AND THE CONFIRMED PLAN

1. On March 29, 2017 the Debtor's Chapter 12 Plan was confirmed by this Court.

2. On or about April the Debtor received a $1,000,000 fulfillment contract for organic corn from a major California organic poultry supplier.

3. On or about April 2017, Debtor received a $441,000 operating loan from a Sacramento area agricultural development bank; First Northern Bank.

4. Since April 2017, Debtor has been making plan payments to Trustee Jan Johnson.

## HISTORY OF THE CONTROVERSY SURROUNDING PROPERTY TAXES

1. On or about October 25, 2017, counsel for Socotra Capital, Paul Cotter, contacted the counsel for Debtor, Noel Knight, by text, stating that the property taxes were in arrears and outstanding; in fact, they were in arrears prior to Plan Confirmation but were inadvertently left out of the Plan.

2. On or about October 25, 2017, Debtor's counsel contacted the Sutter County Tax Collector regarding establishing a payment plan; confirming that it could in fact be done for the Property. Subsequently, Mr. Knight advised Mr. Cotter that a payment plan was being established; Mr. Cotter advised he'd need a copy.

3. On or about October 31, Mr. Knight contacted Sutter County to get the payment plan established. The Tax Collector representative stated they would prepare and fax over an agreement for the Debtor's signature as soon as possible.

4. On or about November 1, 2017, Mr. Knight spoke with a representative of the Tax Collector who stated that they would fax a payment agreement as soon as possible for the Debtor's signature. Mr. Knight then contacted Mr. Cotter to advise that a payment plan was being established at which point Mr. Cotter advised that a payment plan was unacceptable and that Socotra had by fiat "advanced" the money to pay the taxes; See – **Exhibit A.** In fact, the next day, the very same Sutter Tax Collector representative spoken with by Mr. Knight the previous day called to advise him that sending a payment agreement would be moot as the taxes had been paid in full that day.

5. Counsel for the Debtor objected to Mr. Cotter at the payment, advising him that Debtor could pay Sutter County, or Socotra for the taxes.

6. There was dead air from Socotra from that point until the enclosed Notice of Trustee Sale was received at the Property; an NOD was received in November and after that sale date was removed, a second NOD was received in December 2017; See – **Exhibit B**.

### STATEMENT TO THE COURT

Rather than allow the Debtor to establish a payment plan for property taxes, which it was and is more than willing to do, Socotra is attempting by sleight of hand to accomplish its initial aims; seizure of the Property. If allow allowed to do so, not only would Socotra eviscerate the Confirmed Plan, it would also bring carnage to best interests of all remaining creditors.

Under these circumstances, Debtor/Applicant is of the following opinions…

1. We believe that Socotra's actions with regard to the property taxes and the recently filed NOD amount to a violation of the automatic stay, which we are of the opinion remains in full force and effect as Trustee Jan Johnson and his office retain administration of the confirmed plan.

2. We believe that Socotra's actions with regard to the property taxes And Notice of Default constitute interference with and resulting contempt of this case's Confirmed Plan.

3. We believe Socotra is estopped by res judicata from any action with regard to the property taxes as they did not raise the issue at the time of conformation; the property taxes being in arrears at the time of confirmation.

4. We believe that Socotra's actions with regard to the property taxes warrants sanctions sufficient enough to ensure that Socotra will not again attempt to subvert the will of this Court in regard to its Order on the Confirmed Plan in this case.

### LEGAL FOUNDATION

1. **Automatic Stay**…

Section 362(c)(2) of the Bankruptcy Code provides that the automatic stay continues until the earliest of: (A) the time the case is closed; (B) the time the case is dismissed; or (C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied . . . 11 U.S.C. § 362(c)(2).

For a corporation, the automatic stay terminates upon confirmation of a plan, unless the Trustee continues to have involvement in the administration of the plan; See –

Generally speaking, once property of the estate vests in the debtor, the automatic stay provisions expire unless otherwise provided as mentioned *supra*. However, to the extent that property of a debtor remains part of the bankruptcy estate, for example where a trustee or representative of the Bankruptcy Court retains management and control, the automatic stay provisions continue to apply. See - Hillis Motors v. Hawaii Auto Dealers' Ass'n (In re Hillis Motors), 997 F.2d 581 (9th Cir. Hawaii). Allied Technology, Inc. v. R.B. Brunneman & Sons, Inc., 25 B.R. 484 (Bankr. S.D. Ohio 1982); Note..Allied Technology, the court found a violation of the automatic stay for pursuing an action which was effectively an action based upon a pre-petition claim.

2. **Contempt**…

Generally speaking, the provisions of a confirmed Chapter plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the creditor, equity security holder, or general partner has accepted the plan. Thus, once an Order is entered confirming a plan, it is a final binding Order accorded res judicata effect as to all issues and claims arising thereunder. See - Prudence Realization Corp. v. Ferris, 323 U.S. 650, 654-55 (1944) (Bankruptcy Act Case); DNK Properties Crystal Lake v. Mutual Life Ins. Co. of New York, 112 F.3d 257, 259 (7th Cir. 1997) (citing In re Heritage Hotel Partnership I, 160 B.R. 374, 377 (9th Cir. BAP 1993), affirmed 59 F.3d 175 (9th Cir. BAP 1995); Bizzell V. Hemingway, 548 F.2d 505 (4th Cir. 1977); see also Katchen v. Landy, 382 U.S. 323, 334 (1966),

 ("the ordinary rules of res judicata and collateral estoppel apply to the decisions of bankruptcy courts") (citations omitted); <u>Stoll v. Gottlieb</u>, 305 U.S. 165 (1938).

Implementation of the Plan itself is governed by§ 1227, which requires the debtor to carry out the Plan and to comply with any orders of the court; and by inherent power § 1227 also authorizes the bankruptcy court to "direct the debtor and any other necessary party ... to perform any ... act... ***that is necessary for the consummation of the Plan*** . And § 105 empower this bankruptcy court to issue any order necessary or appropriate to carry out the provisions of the Code, including sanctions; See - In re Houlik, 481 B.R. 61 (JO'h Cir. BAP 2012).

3. **Res Judicata**…

Generally speaking, once an Order is entered confirming a Plan, it is a final binding Order accorded <u>res judicata</u> effect as to all issues and claims arising thereunder; See - <u>Prudence Realization Corp. v. Ferris</u>, 323 U.S. 650, 654-55 (1944) (Bankruptcy Act Case); <u>DNK Properties Crystal Lake v. Mutual Life Ins. Co. of New York</u>, 112 F.3d 257, 259 (7th Cir. 1997) (citing <u>In re Heritage Hotel Partnership I</u>, 160 B.R. 374, 377 (9th Cir. BAP 1993), <u>affirmed</u> 59 F.3d 175 (9th Cir. BAP 1995); <u>Bizzell V. Hemingway</u>, 548 F.2d 505 (4th Cir. 1977); See - also <u>Katchen v. Landy</u>, 382 U.S. 323, 334 (1966) ("the ordinary rules of res judicata and collateral estoppel apply to the decisions of bankruptcy courts") (citations omitted); <u>Stoll v. Gottlieb</u>, 305 U.S. 165 (1938); ***Creditors who filed Proof of Claim are bound by a Confirmed Plan***.

DEBTOR'S MOTION FOR ORDER ON ADVERSE CREDITOR ACTIVITY

4. **Sanctions**…

Generally speaking, after confirmation of a plan, the debtors and creditors are bound by the provisions thereof. Implementation of the plan is governed by § 1227, which requires the debtor to carry out the plan and to comply with any orders of the court. And § 105 empowers this bankruptcy court to issue any Order necessary or appropriate to carry out the provisions of the Code, including sanctions.

Noted that violations of Automatic Stay pursuant to Bankruptcy Code §362 (a) can result in sanctions or any mechanism whicb the bankruptcy sees fit to correct the transgression. Furthermore, punitive sanctions are as well available under §362 (k).

**LEGAL ANALYSIS AS APPLIED TO THIS MATTER**

1. If the automatic stay is in effect, then Socotra's placing the property up for sale post confirmation violates the same.

2. Even were the Stay not to be in effect post-conformation, there is a Confirmation Order in place and by placing a fresh Notice of Default on the Property and attempting anew to sell it, Socotra is directly engaging in acts designed to thwart the consummation of the Plan and to wit, as result of its action Socotra is in contempt of the Plan.

3. There is a Confirmation Order in place in this case and ergo, it serves as a final and binding Order accorded res judicata as to all issues and claims arising thereunder.

To wit, at no time prior to or during the confirmation hearing for this case did Socotra raise the issue of property taxes which were in fact in arrears at the time of confirmation. To wit, Socotra is not now allowed to double back and attempt to sell the property based on an issue which they did not contest at the time of Plan Confirmation.

**REQUEST TO THIS COURT**

Socotra's not allowing the Debtor to establish a Property Tax payment amounts to bad faith and as well its' establishment of an NOD on the Nicolaus property not only vitiates the Confirmed Plan but also eviscerates the best interests of all the remaining creditors. Accordingly…

A. Debtor requests that this Court nullify Socotra's Notice of Default by Order.

B. Debtor requests that this Court hold Socotra in contempt of the Confirmed Plan.

C. Debtor requests that this Court place costs and sanctions on Socotra as follows…

1. 12 hours preparing this motion by interview, research, and draft at a Chapter 11 billable rate of $250 per hour. Therefore, Debtor is entitled to primary sanctions in the amount of $3,000.00.

2. Any other sanctions will serve to deter Socotra from looking for any angle or Opportunity to subvert the will of this Court.

3. Debtor will be applying to this Court for Plan modification via separate motion.

s/s  Noel Knight

_____

Noel Knight, Esq.

Counsel for Debtor P & M Samra

DEBTOR'S MOTION FOR ORDER ON ADVERSE CREDITOR ACTIVITY