PAUL R. COTTER, State Bar No. 180685
SOCOTRA CAPITAL, INC.
2208 29TH Street, Suite 100
Sacramento, California 95817
Telephone: (916) 617-2220
Telecopier: (916) 277-9307
paul@socotracapital.com

Attorney for Creditors:
- The Socotra Fund, LLC
- Gary E. Roller Profit Sharing Plan
- Roller Family Living Trust (assignee of the Pettit Revocable Trust, dated March 29, 1999)

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>P&M SAMRA LAND INVESTMENTS, LLC,<br><br>        Debtor. | Case No. 2015-29136-A-12<br><br>DCN: NCK-012<br><br>Chapter 12<br><br>**OPPOSITION TO:**<br>1. **DEBTOR'S MOTION TO HOLD SOCOTRA CAPITAL IN CONTEMPT;**<br>2. **DEBTOR'S MOTION FOR SANCTIONS AGAINST SOCOTRA CAPITAL;**<br>3. **DEBTOR'S APPLICATION FOR AN INJUNCTION OF ADVERSE CREDITOR ACTIVITY;**<br>**MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge:     Michael S. McManus<br>Date:      February 5, 2018<br>Time:     10:00 a.m.<br>Dept:      Courtroom 28, Dept. A<br>             501 I Street<br>             Sacramento, CA 95814 |

       Secured creditors – The Socotra Fund, LLC, Gary E. Roller Profit Sharing Plan, and the Roller Family Living Trust (assignee of the Pettit Revocable Trust, dated March 29, 1999)

1. (collectively "the Socotra Creditors") – hereby oppose as follows Debtor's motion to hold Socotra Capital in contempt, motion for sanctions against Socotra Capital, and application for injunction against adverse creditor activity.

This opposition is based on this notice, the attached Memorandum of Points and Authorities, the Declaration of Paul R. Cotter (including exhibits), and upon such oral and/or testimonial evidence as may be introduced at hearing.

For purposes of resolving evidentiary factual disputes concerning this opposition and the debtor's motion, the Socotra Creditors hereby consent to the Court's resolution of disputed material factual issues pursuant to Fed. R. Civ. P. 43(c) as made applicable by Fed. R. Bankr. P. 9017.

Respectfully submitted,

Date: January 22, 2018

By: ___/s/ Paul R. Cotter_____
PAUL R. COTTER, SBN 180685
Attorney for: The Socotra Fund, LLC; Gary E. Roller Profit Sharing Plan; Roller Family Living Trust dated November 2, 2004 (assignee of the Pettit Revocable Trust, dated March 29, 1999)

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION – SUMMARY OF ARGUMENT**

    **A. Factual Background**

- The Socotra Creditors loaned one million dollars ($1,000,000.00) to the debtor under a Promissory Note Secured by Deed of Trust dated May 22, 2014 ("the Note").[1] The Note is secured by a recorded "Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement; Request for Notice" dated May 22, 2014 ("the Deed of Trust").[2] The Deed of Trust encumbers the debtor's real property located at 4604 Garden Highway, Nicolaus, California ("the Nicolaus Property").

- Debtor's Chapter 12 petition was filed on November 24, 2015. **After** filing the petition, debtor missed four installments of property taxes due to Sutter County, which all became delinquent after the filing of the petition.

- Debtor's Chapter 12 plan was confirmed on March 29, 2017. It is undisputed that the debtor's Chapter 12 plan is totally silent as to the issue of post-petition property taxes.

- On October 31, 2017, the Socotra Creditors, in order to protect the priority of their lien on the Nicolaus Property, advanced the debtor's outstanding **post-petition** delinquent property tax obligations to the Sutter County Tax Collector. The total amount advanced was $30,120.80. (Cotter declaration, Exhibit ___.)

- On December 8, 2017, the Socotra Creditors recorded a "Notice of Default and Election to Sell under Deed of Trust" relating to debtor's failure to pay the property taxes, and the lender's advancing of the property taxes. (Cotter declaration, Exhibit ___.)

    **B. Summary of Argument**

The Socotra Creditors contend that:

- The Section 362 automatic stay was not in place, having been terminated by the plan confirmation.
- Even if the Section 362 stay were in place, it would not have applied to the post-petition delinquent property since those obligations arose after the filing of the petition.

---

[1] Exhibit A to the Declaration of Paul R. Cotter (Docket No. 97).
[2] Exhibit B to the Declaration of Paul R. Cotter (Docket No. 97).

**1**

- The Socotra Creditors had no obligation to seek leave of Court to record a notice of default on a post-petition, non-plan default, such as the failure to pay the property taxes. Debtor agrees that the plan is totally silent on issue of property taxes, and the failure to pay property taxes that became delinquent after filing of petition is a non-plan default that is not covered by the plan, but rather is covered in detail by the deed of trust.
- There is no "res judicata" effect on the issue of property taxes when they were neither fully or fairly litigated in the confirmation process, nor even mentioned.
- The terms of the Socotra's Deed of Trust are controlling on the issue of a post-petition, non-plan default on property taxes. The Deed of Trust:
    - Requires the debtor to ensure there are no property tax delinquencies;
    - Authorizes the lender/creditor to advance delinquent taxes at its discretion;
    - Contains no obligation whatsoever to allow the debtor to satisfy the tax obligation with a "payment plan" with the taxing authority.

## II. LAW AND ARGUMENT

### A. The Automatic Stay Does Not Apply

Section §362(c)(1) provides "the stay of an act against property of the estate under subsection (a) of this section ***continues until such property is no longer property of the estate.***" 11 U.S.C.A. §362(c)(1) (emphasis added.) Cases interpreting this section conclude that plan confirmation, where property revests in the debtor, terminates the Section 362 stay. See, e.g., *In re Petruccelli*, USBC, S.D. CA (March 14, 1990) 113 B.R. 5, 14; *In re Jones*, US Bk Appellate Panel (9th Cir. 2009) 657 F.3d 921.

Debtor's plan provides as follows, at Section 6.04: "*Revesting. Property of the Estate shall revest in the Debtor upon the Effective Date of the Plan.*" The plan was confirmed in March, 2017, and revested the Nicolaus Property in the debtor as of that date. The automatic stay was therefore not in effect when Socotra recorded the Notice of Default in December 2017.

Moreover, Section 362 enjoins action to collect pre-petition debt. Section 362 operates as a stay against "any act to collect, assess, or recover a claim against the debtor that arose ***before***

the commencement of the case under this title…." 11 U.S.C.A §362(a)(6) (emphasis added). In this instance, the property taxes that are subject of the Notice of Default became delinquent and arose *after* the commencement of this case.

In this case, the debtor's Chapter 12 petition was filed on November 24, 2015. The tax installments that were advanced by Socotra were:

- $11,946.30 in tax (plus penalties) that was due in two installments, and became delinquent on December 10, 2015 and April 10, 2016, respectively.[3] Both of these dates are post-petition.

- $12,136.14 in tax (plus penalties) that was due in two installments, and became delinquent on December 10, 2016 and April 10, 2017, respectively. Both of these dates are post-petition.

Because the tax payments advanced by Socotra became delinquent after the filing of the petition, they represent post-petition debt that was never covered by the automatic stay, even if it had not been terminated by the plan confirmation order.

**B. Socotra Had No Obligation to Seek Leave of Court to Address a Non-Plan Default, and Is not Liable for Contempt or Sanctions**

The debtor does not dispute that the plan is silent on the issue of property taxes. In contrast, the deed of trust securing Socotra's lien on the Nicolaus Property (Cotter declaration, Exhibit ____) contains detailed treatment of the issue of property taxes. There is nothing in the plan that alters, abridges, or even vaguely alludes these provisions of the deed of trust, and Socotra retains every right to enforce the provisions as written.

"Absent some action by the representative of the bankruptcy estate, liens ordinarily pass through bankruptcy unaffected, regardless whether the creditor holding that lien ignores the bankruptcy case, or files an unsecured claim when it meant to file a secured claim, or files an untimely claim after the bar date has passed." *In re Brawders*, (9th Cir., 2007) 503 F.3d 856, 867-868, citing *Bisch v. United States*, (9th Cir., 1993) 159 B.R. 546, 550.

---

[3] California Revenue & Taxation Code §2704 provides that the first installment of all property taxes due on November 1 become delinquent if unpaid by close of business the following December 10. Likewise, Revenue & Taxation Code §2705 provides that the second installment becomes delinquent if unpaid after April 10 of each tax year.

**3**

Furthermore, there is no prohibition on a creditor enforcing, post-petition, the terms of the instrument of its lien. "If the debtor defaults in making postpetition payments, the creditor may properly give notice thereof, and any other notices that are appropriate and customary in connection with lien enforcement action based on the postpetition default." *In re Henry*, (C.D. CA 2001) 266 B.R. 457, 472.[4]

In this case, no action was taken by the debtor to address payment of property taxes in the plan, and the plan specifically preserves the terms of Socotra's lien. Section 2.01 of the Plan states, *"Socotra shall retain its lien on the Nicolaus Property and such lien shall not be affected in any way by the Plan."*

There is no basis to impose sanctions on a creditor, or to hold a creditor in contempt for violating the protections of a bankruptcy plan when the plan does not even mention the obligation that the creditor addressed outside the plan. The Socotra Creditors simply addressed a non-plan, post-petition default in accordance with the contractual relationship between the parties, and the debtor cites no applicable authority for the proposition that this is sanctionable conduct.

"Contempt" implies that an order has been violated. Debtor cites no provision of any order (whether the confirmation order or otherwise) that was supposedly violated.

**C. The Confirmation Order Has No Res Judicata Effect on the Property Tax Default**

There is no "res judicata" effect on the issue of property taxes when that topic was never fully or fairly litigated during the confirmation process. Indeed the topic was never mentioned by the debtor during the confirmation process and is not mentioned in the confirmation order. Res judicata effect of a plan confirmation order applies to <u>plan terms</u>, and has no effect on items (like property taxes) that are nowhere mentioned in the plan. *In re Laing*, (10th Cir. 1994) 431 F.3d 1050 (holding that issue of non-dischargeability <u>in plan</u> was entitled to res judicata effect when party raised it in later proceeding).

---

[4] See also *In re Kibler* (E.D. CA, 2001) 2001 WL 388764, where the Court held that where a reaffirmation agreement existed, a creditor did not violate the automatic stay or any other bankruptcy law by sending debtor a notice of a contract default and potential foreclosure. The reaffirmation agreement is analogous to the plan order in this case, in which the explicitly recognizes the continued existence of Socotra's secured lien.

**4**

**D.  The Terms of the Deed of Trust Authorized Socotra's Actions**

The debtor steadfastly ignores the provisions of the deed of trust securing Socotra's interest, obstinately behaving as if the deed of trust does not exist anymore following plan confirmation.  The plan explicitly states that the security interest remains unaltered, except insofar as the plan changes the monthly interest payments and the interest rate.  In addition the plan contains detailed treatment of the issue of property taxes, which authorized Socotra's actions.

A copy of the deed of trust is attached as Exhibit ____, and includes the following:

- Section 6 of the deed of trust provides that "Borrower shall promptly pay, satisfy, and discharge: (a) all Impositions affecting the Mortgaged Property before they become delinquent…." Section 1.10 of the deed of trust defines "Impositions" as including "All real estate and personal property taxes…"  Section 6 reads:

> **6.　Taxes and Other Sums Due.** Borrower shall promptly pay, satisfy, and discharge: (a) all Impositions affecting the Mortgaged Property before they become delinquent; (b) such other amounts, chargeable against

- Section 12 of the deed of trust authorizes the lender to advance any delinquent tax payments.  Section 12 provides, "If Borrower fails to make any payment or do any act required by this Deed of Trust … Lender or Trustee may (but is not obligated to) (a) make any such payment or do any such act in such manner and to such extent as either deems necessary to preserve or protect the Mortgaged Property, this Deed of Trust, or Lender's security for the performance of Borrower's Obligations and payment of the Indebtedness…." Section 12 reads:

> **12.　Borrower's Failure to Comply With Deed of Trust.** If Borrower fails to make any payment or do any act required by this Deed of Trust, or if there is any action or proceeding (including, without limitation, any judicial or nonjudicial proceeding to foreclose the lien of a junior or senior mortgage or deed of trust) affecting or purporting to affect the Mortgaged Property, this Deed of Trust, Lender's security for the performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Note or this Deed of Trust, Lender or Trustee may (but is not obligated to) (a) make any such payment or do any such act in such manner and to such extent as either deems necessary to preserve or protect the Mortgaged Property, this Deed of Trust, or Lender's security for the performance of Borrower's Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Loan Documents, Lender and Trustee being authorized to enter on the Mortgaged Property for any such purpose; and (b) in exercising any such power, pay necessary expenses, retain attorneys, and pay Attorney Fees incurred in connection with such action, without notice to or demand on Borrower and without releasing Borrower from any Obligations or Indebtedness.

1  - Section 13 of the deed of trust requires the debtor/borrower to immediately pay back any sums advanced, and until the sums are re-paid, they become part of the "Indebtedness" secured by the deed of trust.[5]

> **13. Sums Advanced to Bear Interest and to Be Secured by Deed of Trust.** At Lender's request, Borrower shall immediately pay any sums advanced or paid by Lender or Trustee under any provision of this Deed of Trust or the other Loan Documents. Until so repaid, all such sums and all other sums payable to Lender or Trustee shall be added to, and become a part of, the Indebtedness secured by this Deed of Trust and bear interest from the date of advancement or payment by Lender or Trustee at the same rate as provided in the Note, unless payment of interest at such rate would be contrary to Governmental Requirements. All sums advanced by Lender under this Deed of Trust or the other Loan Documents, whether or not required to be advanced by Lender under the terms of this Deed of Trust or the other Loan Documents, shall conclusively be deemed to be mandatory advances required to preserve and protect this Deed of Trust and Lender's security for the performance of the Obligations and payment of the Indebtedness, and shall be secured by this Deed of Trust to the same extent and with the same priority as the principal and interest payable under the Note.

- Section 19 of the deed of trust provides that failure to pay such "Indebtedness" is an "Event of Default" that triggers the acceleration clause and authorizes a foreclosure proceeding. Section 19 reads:

> **19. Events of Default.** The term Event of Default as used in this Deed of Trust means the occurrence or happening, at any time and from time to time, of any one or more of the following:
> **19.1. Payment of Indebtedness.** Borrower fails to pay any installment of interest and/or principal under the Note or any other Indebtedness when due and such failure continues for more than 10 days after the date such payment was due and payable whether on maturity, the date stipulated in any Loan Document, by acceleration, or otherwise.

The debtor suggests in his briefing that Socotra somehow had some obligation to allow debtor to set up a "payment plan" with the County. There is nothing in either the deed of trust or any other contractual document between Socotra and the debtor that obligates Socotra to accept or be satisfied by the debtor/borrower establishing a payment plan with the taxing authority. ON the contrary, the only language in the deed of trust addressing this situation requires the borrower/debtor or immediately satisfy the entire obligation before its delinquency. The document further requires immediate and full repayment from the borrower/debtor for amounts advanced.

---

[5] Section 1.12.4 of the deed of trust defines "Indebtedness" as including "Any … funds advanced to protect the security or priority of the Deed of Trust…."

**III. CONCLUSION**

There is no basis to support any order of sanctions or contempt against the Socotra Creditors. The plan does not address the situation, and the creditor is merely protecting its interest by proceeding under the terms authorized by the lien instrument and the loan documents, all of which remain unaltered in those respects by the plan. There is likewise no basis to enjoin further creditor action by the Socotra Creditors.

Respectfully submitted,

Date: January 22, 2018

By: ___*/s/ Paul R. Cotter*___
PAUL R. COTTER, SBN 180685
Attorney for: The Socotra Fund, LLC; Gary E. Roller Profit Sharing Plan; The Roller Family Living Trust (as assignee of the Pettit Revocable Trust, dated March 29, 1999)